IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LUCIO ABEL, | ) |
| Plaintiff, | ) |
| V. | ) Civil No. **05-264-GPM** |
| MARK PIERSON, et al., | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

**PROUD, Magistrate Judge:**

Before the Court is defendants James Belford, Bobby B. Johnson, Jr., and Jason Bradley's second motion for summary judgment. **(Doc. 52).** The defendants' first motion **(Doc. 13)** was denied, in that the Court concluded that questions of fact existed as to whether the administrative grievance system was available to plaintiff, who has a very limited ability to speak English. **(Doc. 25).** Counsel has since been appointed to represent plaintiff. The defendants again assert that plaintiff has failed to exhaust administrative remedies, and they present additional arguments attacking the merits of the complaint. This Report and Recommendation is respectfully submitted to United States District Judge G. Patrick Murphy pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C).

## The Complaint and Threshold Order

On April 13, 2005, Lucio Abel, an inmate in the custody of the Illinois Department of Corrections, filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983. **(Doc. 1).** The pro se complaint was initially construed by the Court as asserting an Eighth Amendment excessive force claim and a First Amendment retaliation claim, presumably against all three

1

defendants– both claims stemming from an alleged attack on plaintiff by unknown correctional officers. **(Docs. 1 and 8).** As summarized in the Court's threshold order, the complaint alleges the following:

> [O]n August 13, 2003, several unknown corrections officers entered his cell while he was sleeping. One officer strangled him with wire and another covered his head with a blanket. Plaintiff lost consciousness and later awakened on the floor of his cell. As a result of the attack, Plaintiff had "burns" on his arm and cuts and bruises on his neck. Plaintiff requested medical help from the corrections officers in the unit, but they refused help. One officer, Defendant B. Johnson, told Plaintiff to "shut up, Mexican!" A few hours later, Plaintiff saw a nurse distributing medications to other prisoners. He banged on the door of his cell and yelled to get her attention. Upon seeing Plaintiff's injuries through the cell door, the nurse ordered a corrections officer to open the cell, and she entered to treat Plaintiff's injuries. On the nurse's orders, Plaintiff was taken to the Health Care Unit for further treatment. Plaintiff states that while he was in the health unit he asked for a translator, but Defendant L. Bradley told Plaintiff there was not one available. A person came forward claiming he could speak Spanish, but Plaintiff had a difficult time understanding him, except for the phrases "how much money do you want" and "do you want to get transferred to another facility?"
> 
> Plaintiff further states that after he was returned to his cell, corrections officers and other prison employees, including Defendant J. Belford, began retaliating against him by refusing to serve him meals, banging on his cell at night when he was sleeping, and yelling at him. Plaintiff submitted grievances regarding the incident and his subsequent treatment, and later two detectives from Springfield spoke with him regarding the attack. Plaintiff states that the detectives became angry when he refused to answer their questions, many of which he could not understand because of his limited command of English. Plaintiff believes the detectives were "working for the institution to intimidate me." Plaintiff states that he continues to fear another attack by corrections officers.

**(Doc. 8, pp. 2-3).**

## Issues Presented

The defendants argue they are entitled to summary judgement for the following reasons:

1. Plaintiff cannot show, as a matter of law, that defendants were involved in the alleged assault committed against plaintiff by unknown correctional officers on August 13, 2003;

2. Plaintiff cannot show, as a matter of law, that defendants retaliated against

2

> plaintiff for his use of prison redress procedures;
>
> 3. Plaintiff has failed to exhaust administrative remedies as required; and
>
> 4. Defendants are entitled to qualified immunity relative to the retaliation claim.

**(Doc. 52).**

Plaintiff generally opposes the defendants' motion. **(Doc. 54).** Plaintiff argues:

> 1. Questions of material fact exist as to whether defendant Johnson used excessive force;
>
> 2. Questions of material fact exist as to whether the defendants retaliated against plaintiff;
>
> 3. Argument regarding exhaustion of administrative remedies is precluded by the law of the case and entails questions of disputed material fact; and
>
> 4. Defendants are not entitled to qualified immunity because material questions of fact remain concerning the excessive force and retaliation claims, and the defendants have not addressed the other constitutional rights violated by the defendants.

**(Doc. 54).**

## Standard for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c);** *see Celotex Corp. v. Catrett,* **477 U.S. 317, 322 (1986);** *Spath v. Hayes Wheels Int'l-Ind., Inc.,* **211 F.3d 392, 396 (7th Cir. 2000).** In determining the existence of a genuine dispute of material fact, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 255 (1986);** *Spath,* **211 F.3d at 396.**

If the moving party meets its burden, the nonmoving party has the burden "to go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Borello v. Allison,* **446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted);** *Celotex,* **477 U.S. at 322-26;** *Johnson v. City of Fort Wayne,* **91 F.3d 922, 931 (7th Cir. 1996).** A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson,* **477 U.S. at 247**, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* **475 U.S. 574, 586 (1986)**. Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* **477 U.S. at 252;** *Insolia v. Phillip Morris Inc.,* **216 F.3d 596 (7th Cir. 2000).**

### Exhaustion of Administrative Remedies

The issue of exhaustion of administrative remedies in accordance with 42 U.S.C. § 1997e(a), must be addressed first because, while not jurisdictional per se, exhaustion is a "precondition" to suit, regardless of the apparent futility of pursuing an administrative remedy, regardless of whether money damages are sought as a tangential remedy, and regardless of notions of judicial economy. *Woodford v. Ngo,* **548 U.S. 81, ---- - ----, 126 S.Ct. 2378, 2382-2383(2006);** *Booth v. Churner***, 532 U.S. 731, 739 (2001)***; Pozo v. McCaughtry,* **286 F.3d 1022, 1025 (7th Cir. 2002);***Perez v. Wisconsin Department of Corrections***, 182 F.3d 532 (7th Cir. 1999).**

"Because failure to exhaust administrative remedies is an affirmative defense, defendants have the burden of pleading and proving the defense." *Massey v. Helman***, 196 F.3d 727, 735**

4

**(7th Cir. 2000).** "Defendants may waive or forfeit reliance on [42 U.S.C.] § 1997e(a), just as they may waive or forfeit the benefit of a statute of limitations." *Perez,* **182 F.3d at 536.**

The rules governing the filing and prosecution of a grievance, including the appeal, must be followed to achieve exhaustion; substantial compliance is insufficient. ***Lewis v. Washington* 300 F.3d 829, 833-834 (7th Cir. 2002).** When prison officials fail to respond to an inmate grievance that remedy is considered exhausted because it has been rendered "unavailable." *Id.* Similarly, a remedy that prison officials impede a prisoner from using is "unavailable." ***Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004);** *Dole v. Chandler***, 438 F.3d 804, 811-812 (7th Cir. 2006).**

The Court's September 12, 2006, order regarding exhaustion stated:

> It is undisputed that Plaintiff did not complete the administrative grievance process. He did, however, request assistance with his grievance as is available under the Illinois Administrative Code for individuals who are unable to communicate in English. *See* Ill. Admin. Code. §§ 504.810(c) and (c)(2) (providing that staff assistance shall be available as requested by those offenders who cannot prepare their grievances unaided as determined by institutional staff and that each facility shall take reasonable steps to ensure that the grievance procedure is accessible to offenders who are unable to communicate in the English language). Plaintiff tried submitting a grievance in Spanish to the Administrative Review Board, which was returned with instructions to provide further documentation, and submitting a grievance in English to his counselor, which was denied because staff conduct could not be substantiated. Plaintiff argues that he was unable to exhaust the administrative process because of his limited ability to speak English and because his counselor refused to take the grievance that was denied to the grievance officer. Plaintiff contends that he was required to use the counselor to forward his grievance to the grievance officer because he was in segregation. According to Plaintiff, the only other alternative would have been to ask Defendants, who allegedly beat and strangled him, to forward the grievance to the grievance officer. He therefore argues that he did all he knows to do to exhaust his administrative remedies.

**(Doc. 25, p. 3).** The Court found: "Because a fact question exists as to whether the grievance system was available to Plaintiff, summary judgment is inappropriate at this point." **(Doc. 25, p. 5).**

Plaintiff argues that the defendants' renewed motion for summary judgment based on exhaustion is precluded by the law of the case. "[T]he law of the case doctrine embodies the notion that a court ought not to re-visit an earlier ruling in a case absent a compelling reason, such as manifest error or a change in the law, that warrants re-examination." *Minch v. City of Chicago,* **486 F.3d 294, 301 (7th Cir. 2007).** This Court construes Judge Murphy's declaration, "summary judgment is inappropriate *at this point,*" as leaving open the possibility of revisiting the issue. Therefore, this Court will consider the defendants' arguments and evidence to determine if questions regarding the availability of the grievance system have been resolved.

This Court finds that crucial questions regarding whether plaintiff was given appropriate assistance in completing a grievance and navigating the appropriate administrative remedies remain, thereby precluding summary judgment based on plaintiff's failure to exhaust administrative remedies. Plaintiff speaks Spanish; he is not bilingual; he states he did not understand the grievance procedures because they were never explained in Spanish. **(Doc. 54-2, pp. 2-3).** According to plaintiff, he repeatedly tried to get Paulsmeyer to assist him, but she was always escorted by other correctional officers, and she only stated that she did not speak Spanish. **(Doc. 54-2, p. 6).** Paulsmeyer does not speak Spanish. **(Doc. 54-13, p. 9).** During her deposition, Counselor Paulsmeyer testified that a part of her duty as a counselor is giving inmates grievances forms, but she did not recall ever writing a grievance for an inmate. **(Doc. 52-2, p. 14).** If an inmate was Spanish speaking, Paulsmeyer stated she would "[p]robably have

6

to get in touch with the Spanish speaking person," but she did not recall a Spanish speaking inmate asking for assistance in completing a grievance. **(Doc. 52-2, p. 14).** Therefore, it remains unclear whether anything was done to assist the Spanish speaking plaintiff. The Court further notes that plaintiff filed a grievance that, although written in Spanish, appears to pertain to Counselor Paulsmeyer not assisting him, and references plaintiff's inability to speak English. **(Doc. 1-2, p. 4-5).** Again, the defendants have failed to carry their burden of showing that plaintiff failed to exhaust administrative remedies.

### The Eighth Amendment Excessive Force Claim

Plaintiff's Eighth Amendment excessive force claim was initially considered as to all three defendants, Belford, Johnson and Bradley, although the complaint indicates that unknown officers attacked plaintiff. **(Docs. 1 and 8).** In a civil rights suit such as this, 42 U.S.C. §1983 requires a plaintiff to show "(1) an action taken under color of law (2) which violates his federal constitutional rights." ***Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir. 1991).** *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983), stresses that "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a [Section] 1983 action unless he caused or participated in an alleged constitutional deprivation." ***See also McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir.1982).** Moreover, "[w]here a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." ***Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974);** *see also Black v. Lane*, **22 F.3d 1395, 1401 n. 8 (7th Cir.1994); and *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).**

7

Plaintiff now testifies that at the start of the attack he actually saw defendant Johnson, before a blanket was put over his head. **(Doc. 54-2, pp. 3-4).** The complaint indicates the attack occurred at about 6:20 a.m. **(Doc. 1, p. 4).** Defendant Johnson's affidavit states that he did not report for work until 7:00 a.m. on August 13, 2003, as reflected in his time sheet. **(Doc. 52-2, pp. 8-9).** Plaintiff asserts that Johnson could have arrived at work early and stopped to attack plaintiff before clocking-in. The complaint indicates plaintiff was fed breakfast at around 6:00 a.m, and he then took a nap; plaintiff estimated he was attacked 20 minutes later. **(Doc. 1, p. 4).** Plaintiff's affidavit indicates there is no clock in his cell and, given that he was asleep when the attack began, 6:20 a.m. is only an estimation. **(Doc. 54-2, pp. 3-4).** Johnson denies any role in the alleged attack. **(Doc. 52-2, p. 9).** The facts in the record leave many material questions and questions of credibility unanswered, thereby precluding summary judgment relative to defendant Johnson.

Plaintiff's response to the subject motion indicates there are questions of fact regarding Johnson's role, but no mention is made of defendants Belford and Bradley. **(Doc. 54, p. 4-5).** Defendant Belford's undisputed affidavit indicates he had no role in the alleged attack. **(Doc. 52-2, p. 11).** Plaintiff's answers to interrogatories reflect he is not including Belford and Bradley in the excessive force claim. **(*See* Doc. 52-2, pp. 2-4).** Therefore, defendants Belford and Bradley are entitled to summary judgment with respect to the Eighth Amendment excessive force claim.

### The First Amendment Retaliation Claim

To establish a claim of retaliation for exercising free speech, an inmate must allege a chronology of events from which retaliation can be inferred, and prove both that his grievances

8

were the motivating factor behind the defendant's conduct, and that things would have transpired differently absent the retaliatory motive. ***Hasan v. Department of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996).**

Plaintiff's First Amendment retaliation claim was initially considered as to all three defendants, Belford, Johnson and Bradley, although the complaint only suggests specific retaliatory acts by defendant Belford– repeatedly banging on plaintiff's window, yelling and giving plaintiff hostile stares and denying him breakfast. **(Docs. 1 and 8).** According to the complaint, after plaintiff was attacked, he indicated to defendant Bradley that he wanted justice and thereafter he attempted to file grievances regarding the attack; after plaintiff spoke with Bradley, unspecified officers denied plaintiff lunch– purportedly saying "bad things" about plaintiff because they had "very hostile" looks on their faces; and several days later unidentified correctional officers banged on plaintiff's window as he was sleeping. **(Doc. 1, p. 5).**

As previously noted, "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a [Section] 1983 action unless he caused or participated in an alleged constitutional deprivation." ***See also McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir.1982).** Moreover, "[w]here a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." ***Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *see also Black v. Lane*, 22 F.3d 1395, 1401 n. 8 (7th Cir.1994); and *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).**

Plaintiff now asserts that questions of fact preclude summary judgment as to *all three*

9

defendants. Plaintiff argues that there is circumstantial evidence to conclude the defendants engaged in retaliatory acts. Plaintiff contends that since Johnson's partner was present when plaintiff was first questioned about the attack– when he asked for justice– word could have gotten back to Johnson and/or then "circulated through co-worker chit-chat to Johnson and Belford. **(Doc. 54, p. 6).** Plaintiff further argues that, since inmates must request grievance forms from guards and other prison personnel, and plaintiff had asked Johnson for such a form, and then grievances are collected by prison personnel, there is a sufficient question of fact to preclude summary judgment. **(Doc. 54, pp. 6-7).** At this stage, plaintiff must present more than mere speculation and unsubstantiated theories. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson,* 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.,* 475 U.S. at 586. Therefore the Court will examine the complaint and evidence presented at this juncture.

The complaint clearly alleges a retaliatory claim against defendant Belford, insofar as it is alleged that Belford banged on plaintiff's window and yelled and stared at him. The harm necessary for a retaliation claim must be more than de minimis, but need not be great, that which appears trivial in detail may be actionable in gross. ***See Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982).** However, in his affidavit, Belford denies any acts of retaliation or any knowledge of a grievance of the alleged assault or any related grievance. **(Doc. 52-2, p. 11).** Plaintiff observes that Belford stated in his deposition that he had no recollection of plaintiff. **(Doc. 54-9, p. 6).** Plaintiff argues that Belford's affidavit and deposition statements are inconsistent. This Court does not find the two statements inconsistent. One can simultaneously have no

recollection of a particular individual and be certain that an event did not occur– the two are not mutually exclusive.  With all that said, plaintiff has set forth a chronology of events, acts sufficient for a claim of retaliation, and pitted his word against Belford's, leaving it to the trier of fact to make the final credibility determination.  Therefore, this Court would have defendant Belford proceed to trial on the retaliation claim.

The complaint does not specifically link defendant Bradley to the retaliation claim.  There is no additional evidence in the record of any retaliatory conduct by defendant Bradley.  Plaintiff's interrogatory answer relative to claims lodged against Bradley does *not* list retaliation or anything that can be construed as a retaliation claim.  **(Doc. 52-2, pp. 3-4).**  Plaintiff's subsequent argument in response to the motion for summary judgment is insufficient to create a question of fact for trial.   Although Bradley was allegedly aware that plaintiff wanted justice for the attack, any further link to the alleged acts of harassment is baseless speculation.  Plaintiff does *not* contend he knows who committed the harassing, retaliatory acts.  Plaintiff is essentially attempting to argue that anyone who had any knowledge of plaintiff's attempts to seek redress for the attack could have been one of the unidentified harassing officers.  Joint liability and/or the res ipsa loquitur  doctrine cannot carry the day for plaintiff, as this is not a situation where all of the defendants have committed the alleged wrongful act and only causation is at issue.  *See Fillmore v. Page*, **358 F.3d 496, 507 (7th Cir. 2004).**  Therefore, defendant Bradley should be granted summary judgment relative to the retaliation claim.

The complaint does not specifically link defendant Johnson to the retaliation claim, but plaintiff's answers to interrogatories confirms plaintiff is asserting a retaliation claim against Johnson.  **(Doc. 52-2, p. 3).**  Plaintiff does contend he asked Johnson for a grievance form, but

Johnson did not give him a form. **(Doc. 54-2, p. 6).** Defendant Johnson's affidavit states that he did not have any knowledge that plaintiff had attempted to use prison redress procedures in any manner regarding the alleged attack, he did not engage in any acts of retaliation, and he did not otherwise commit the alleged harassing acts. **(Doc. 52-2, p. 9).** Assuming Johnson had knowledge of the attack and knowledge that plaintiff wanted a grievance form, a reasonable jury could conclude that Johnson realized plaintiff intended to seek redress for the attack. However, there is no additional evidence in the record of any retaliatory conduct by defendant Johnson. Again, plaintiff does *not* contend he knows who committed the harassing, retaliatory acts. Plaintiff is essentially attempting to argue that anyone who had any knowledge of plaintiff's attempts to seek redress for the attack could have been one of the unidentified harassing officers. Therefore, like defendant Bradley, defendant Johnson should be granted summary judgment relative to the retaliation claim.

### **Qualified Immunity**

Qualified immunity generally shields government officials performing discretionary functions from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known. ***Baxter v. Vigo County School Corp.*, 26 F.3d 728, 737 (7th Cir. 1994).** The plaintiff bears the burden of establishing the existence of a clearly established constitutional right in relation to the specific facts confronting the public official when he acted. ***Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988).** Thus, an official is personally liable for his or her unlawful actions if, "assessed in light of the legal rules that were clearly established at the time it was taken," those actions were legally and objectively unreasonable. ***May v. Sheahan*, 226 F.3d 876, 881 (7th Cir.2000)**

**(quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)).**

Defendants appear to claim qualified immunity *only* with respect to the retaliation claim. The state of the law is not at issue. Rather, defendants are arguing that, if there is no evidence of their knowledge of plaintiff filing a grievance or otherwise seeking redress regarding the attack, if they are not granted summary judgment, that would be contrary to the existing law. In contrast, plaintiff has construed defendants' motion as asserting qualified immunity as to the excessive force claim and the retaliation claim. Therefore, the Court will consider whether the defendants are entitled to qualified immunity on either claim.

With respect to the excessive force claim, it is recommended that only defendant Johnson proceed to trial on that claim, due to remaining questions of fact. Until those questions of fact are determined, an analysis of entitlement to qualified immunity is premature. Similarly, insofar as this Court recommends that only defendant Belford proceed on the retaliation claim, an analysis of entitlement to qualified immunity is premature.

## **Possible Other Claims**

Plaintiff asserts that the defendants have failed to address additional constitutional claims plaintiff indicated in his answers to interrogatories. **(Doc. 54, p. 14; see Doc. 52-2, pp. 2-4).** Of course, claims cannot be asserted via interrogatory; only those claims asserted via complaint are properly before the Court. The Court has already reviewed the complaint and recognized only two constitutional claims. In that respect, the law of the case doctrine would preclude this Court from questioning the District Court's prior ruling. Moreover, plaintiff is now represented by counsel, who has never moved to amend the complaint.

**Recommendation**

For the aforestated reasons, this Court recommends that defendants James Belford, Bobby B. Johnson, Jr., and Jason Bradley's second motion for summary judgment **(Doc. 52)** be granted in part and denied in part. More specifically, the case should proceed, in that defendants failed to carry their burden in showing that plaintiff failed to exhaust *available* administrative remedies; defendant Bradley should be granted summary judgment on all claims; defendant Johnson should be granted summary judgment relative to the retaliation claim, but he should proceed to trial on the excessive force claim; and defendant Belford should be granted summary judgment relative to the excessive force claim, but he should proceed to trial on the retaliation claim; the affirmative defense of qualified immunity should remain open to Johnson and Belford, as questions of fact remain.

**DATED: February 13, 2008**

          **s/ Clifford J. Proud**
          **CLIFFORD J. PROUD**
          **U. S. MAGISTRATE JUDGE**

**Notice of Response Deadline**

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 6(e), the parties shall file any objections to this report and recommendation on or before **March 2, 2008**. No extensions of time will be granted.